UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

 PATRICK R.,

                              Plaintiff,                          **DECISION AND ORDER**

                v.                                                1:20-CV-01582-EAW

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

## INTRODUCTION

Represented by counsel, Plaintiff Patrick R. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for supplemental security benefits ("SSI").  (Dkt. 1).  This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Dkt. 8; Dkt. 9).  For the reasons discussed below, Plaintiff's motion (Dkt. 8) is denied and the Commissioner's motion (Dkt. 9) is granted.

## BACKGROUND

Plaintiff protectively filed his applications for SSI and Disability Insurance Benefits (DIB) on March 21, 2018.  (Dkt. 7 at 294-06).[1]  In his applications, Plaintiff alleged disability beginning May 1, 2005.  (*Id*. at 294, 300).  Plaintiff's applications were initially denied on July 18, 2018.  (*Id*. at 180-01).  At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Gina Pesaresi on October 17, 2019.  (*Id*. at 152-79).  At the hearing, Plaintiff withdrew his DIB claim and amended the alleged onset date to January 1, 2018.  (*Id*. at 155).  On November 19, 2019, the ALJ issued an unfavorable decision.  (*Id*. at 15-24).  Plaintiff then requested review by the Appeals Council, which the Council denied on August 27, 2020, making the ALJ's determination the final decision of the Commissioner.  (*Id.* at 5-8).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 416.929), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e). The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

## I.   The ALJ's Decision

In deciding whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation analysis set forth in 20 C.F.R. § 416.920 and determined at step one of the analysis that Plaintiff had not engaged in substantial gainful work activity since January 1, 2018, the alleged onset date. (Dkt. 7 at 17).

At step two, the ALJ found that Plaintiff suffered from several severe impairments: degenerative disc disease of the cervical spine, status-post anterior fusion of C4-C6, and degenerative joint disease of the right shoulder. (*Id*. at 18). The ALJ also determined that Plaintiff's hypertension, vitamin D deficiency, and substance use disorder were all non-severe impairments. (*Id*.).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*. at 18-19). Before proceeding to step four, the ALJ concluded that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a), except that he could only frequently handle with the right hand and reach in all directions but not overhead with his right upper extremity, and occasionally bend and twist but never climb ladders, ropes, or scaffolds, crawl, or work around hazards such as unprotected heights or moving machinery. (*Id*. at 19).

At step four, the ALJ found that Plaintiff did not have any past relevant work. (*Id*. at 22). With the help of the VE, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as the occupations of an addresser, document preparer, and food order clerk. (*Id*. at 23). Accordingly, the ALJ concluded that Plaintiff was not disabled from the date of his application through the date of her decision. (*Id*. at 24).

II.    **The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error**

Plaintiff argues that the matter should be reversed, or, in the alternative, remanded for further proceedings because the ALJ's finding that Plaintiff could frequently handle and reach with his right upper extremity was not supported by substantial evidence.  (Dkt. 8-1 at 9-13).  The Commissioner objects, arguing that the ALJ properly considered the record in accordance with the amended regulations and determined that Plaintiff, despite his impairments, was able to perform sedentary work with additional limitations.  (Dkt. 9-1 at 4-12).  For the reasons discussed below, the Court finds Plaintiff's argument without merit.

Under the amendments to the Social Security regulations related to the evaluation of medical evidence for disability claims filed after March 27, 2017, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources."  20 C.F.R. § 416.920c(a).  Instead, the ALJ "will articulate in [his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions and all prior administrative medical findings" in claimant's record based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and 'other factors.'"  *Id.* § 416.920c(c).  The source of the opinion is not the most important factor in evaluating its persuasive value.  *Id.* § 416.920c(b)(2).  Rather, the most important factors in evaluating persuasiveness are supportability and consistency.  *Id.*

"Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021) (internal citation omitted). Specifically, the ALJ must explain how he considered the supportability and consistency factors, and may, but is not required to, consider the three remaining factors. 20 C.F.R. § 416.920c(b)(2). The ALJ's failure to adequately explain how he considered the supportability and consistency of a medical opinion in the record constitutes procedural error. *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022). However, even if the ALJ commits such an error, the reviewing court may affirm if "a searching review of the record assures [the court] 'that the substance of the [regulation] was not traversed.'" *Loucks*, 2022 WL 2189193, at *2 (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (internal citation and quotation marks omitted)).

Here, in determining Plaintiff's RFC, the ALJ relied on two medical opinions—an opinion issued by consultative examiner Nikita Dave, M.D. ("Dr. Dave"), and an opinion of a State agency medical consultant J. Poss, M.D. ("Dr. Poss"). (Dkt. 7 at 18). Plaintiff takes issue with the ALJ's reliance on the latter opinion because, he argues, it was improper for the ALJ to credit portions of the opinion while finding that Plaintiff required greater limitations than those determined by Dr. Poss. (Dkt. 8-1 at 10). The Court disagrees.

It has been well-recognized that it is the ALJ who is tasked with formulating an RFC based on a review of the entire record, and that it is within the ALJ's discretion to resolve

genuine conflicts in the evidence.  20 C.F.R. § 416.920c; *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).  In making her RFC determination, the ALJ may "choose between properly submitted medical opinions," *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (internal citation omitted), and is free to reject portions of a medical opinion that are not supported by objective evidence of record, while accepting those portions that are supported by the record.  *See Veino*, 312 F.3d at 588.  Moreover, an ALJ may formulate an RFC absent any medical opinion.  "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required[.]"  *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted); *see also Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109 (2d Cir. 2020) ("[A]lthough there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity.") (internal citations omitted).

Contrary to Plaintiff's contentions, it was not improper for the ALJ to analyze the persuasiveness of Drs. Dave and Poss's opinions from the prism of Plaintiff's treatment history by other medical providers, Plaintiff's diagnostic testing, as well as his ability to perform various daily activities.  That is precisely the kind of analysis the ALJ was required to perform to determine the supportability and consistency of each opinion with the objective evidence of the record.  *See* 20 C.F.R. § 416.920c(b) and (c).  Indeed, the ALJ

properly found Dr. Dave's opinion about Plaintiff's moderate to marked limitations in repetitive bending of his cervical spine, repetitive gross manipulation through the right upper extremity, and repetitive range of motion with the right shoulder not persuasive because it was vague, not supported by the generally normal findings of Plaintiff's treating sources, and lacked specific work-related functional limitations.  *See Johnson v. Colvin*, 669 F. App'x 44, 46 (2d Cir. 2016) (an ALJ can look to all of the relevant medical and other evidence, including relevant medical reports, medical history, and a claimant's statements when assessing the RFC); *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (ALJ did not err by failing to adopt consultative examining physician's conclusions in determining the claimant's RFC where the physician's findings were inconsistent with other contemporaneous medical records).

The ALJ also properly found the opinion of Dr. Poss to be "somewhat persuasive" because his findings of Plaintiff being capable of light work with occasional overhead reaching and frequent gross manipulation were generally consistent with Plaintiff's treatment history, diagnostic reports, and ability to engage in various daily activities. However, given Plaintiff's continuous reports of severe neck and arm pain, as well as complaints of dropping things after the opinion was rendered, the ALJ found Plaintiff to be more limited than was determined by Dr. Poss and, as a result, limited Plaintiff to sedentary work without overhead reaching with his right upper extremity.  *See Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (the ALJ did not commit an error by deviating from consultative examiners' recommendations to decrease plaintiff's RFC based on other evidence in the record).

Plaintiff argues that the ALJ's reliance of Dr. Poss's opinion was improper because Dr. Poss did not opine about Plaintiff's ability to reach in all directions and, instead, only limited Plaintiff's ability to reach overhead with his right upper extremity which, Plaintiff argues, fails to provide support for the ALJ's finding that Plaintiff was capable of reaching in all directions, except for overhead.  (Dkt. 8-1 at 11).  Plaintiff's argument fails because it has been well-established that the ALJ's conclusions need not "perfectly correspond with any of the opinions of medical sources cited in [her] decision."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (internal citations omitted).  Because it is the ALJ who is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole" (*id.*), and because the RFC determination is reserved to the Commissioner and not a medical professional, the Court is satisfied with the ALJ's analysis of the record and her ultimate RFC determination.  *See  Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("[T]he ultimate finding of whether a claimant is disabled and cannot work—[is] reserved to the Commissioner. That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability." (internal quotation and citation omitted)).

While the Court recognizes Plaintiff's struggle with severe neck and shoulder pain as a result of a motor vehicle accident in 2005 and the subsequent exacerbation of his symptoms in 2018, it finds that the record does not support the conclusion that Plaintiff's limitations prevented him from working in accordance with the RFC formulated by the ALJ.  *See Mauro v. Comm'r of Soc. Sec.*, 746 F. App'x 83, 84 (2d Cir. 2019) ("subjective complaints alone are not a basis for an award of disability insurance benefits in the absence

of corroborating objective medical evidence").   Indeed, the record demonstrates that Plaintiff sustained severe neck injuries as a result of the accident, and underwent a successful cervical decompensation surgery, which essentially kept him pain-free for many years until approximately 2018.  (Dkt. 7 at 197-98, 456, 469).  Following unsuccessful physical therapy, Plaintiff returned to his orthopedic specialist in early 2018 with complaints of severe radiating neck and shoulder pain, as well as intermittent numbness and tingling in his right upper extremity.  (*Id*. at 456, 469).  The x-ray examination of Plaintiff's right shoulder demonstrated normal alignment, lack of fracture or significant arthritis of the AC and glenohumeral joint, and only mild degenerative changes in the joint.  (*Id*. at 525).  Plaintiff's orthopedic surgeon Lindsey Clark, M.D. ("Dr. Clark") observed normal range of motion in Plaintiff's neck, normal reflexes in both upper extremities, full (5/5) strength in Plaintiff's deltoids, biceps, and triceps on the left and slightly diminished (4/5) strength of the same muscles on the right side, as well as full strength in his wrists and fingers.  (*Id*. at 457).  The x-ray examination following Dr. Clark's visit revealed significant arthritis at the C2-C3 and C7-T1 levels, and shifting of the screws and plates in his neck.  (*Id*. at 459).  However, a CT scan performed a month later demonstrated multilevel neural foraminal stenosis of Plaintiff's neck, but showed no visible evidence of central canal stenosis, acute compression deformity of the cervical spine vertebral bodies, or presence of hardware failure.  (*Id*. at 476-77).  The subsequent CT scans of Plaintiff's neck and right shoulder demonstrated degenerative changes of Plaintiff's cervical spine with some kyphosis, spondylosis, and potential loosening of the anchoring screws, but

- 11 -

showed no significant degenerative changes of the glenohumeral joint in his right shoulder. (*Id*. at 482-83).

Although Plaintiff's treating providers routinely noted Plaintiff's complaints of radiating pain in his neck and shoulders, and observed limited range of motion of the cervical or lumbar spines during some of his examinations, their treatment records also revealed generally normal findings related to Plaintiff's shoulders and wrists, full or only slightly diminished strength, intact sensation, and normal movement and reflexes in both Plaintiff's upper extremities.   (Dkt. 7 at 510-12, 530-31).   For instance, during the examination by neurosurgeon Richard Kanoff, D.O., Plaintiff had full strength and reflexes in his wrists, biceps, and all other muscle groups of both upper extremities, and only slightly diminished strength of his right deltoid and triceps. (*Id*. at 510-11).  Similarly, Dr. Clark observed Plaintiff's normal flexors and full strength in both his shoulders, wrists, and fingers, except for a slightly diminished (4/5) strength in his right triceps and right abductors.  (*Id*. at 538-39).  Plaintiff's reflexes in both upper extremities were normal and the Hoffmann's test was negative on both sides.  (*Id*.).  Although during the examination by David Bagnall M.D., Plaintiff demonstrated decreased range of motion in his cervical spine and shoulders, as well as diminished flexes of his upper extremities, the rest of his motor examination was otherwise normal.   (*Id*. at 516-23).   Similarly to Plaintiff's orthopedic treating providers, consultative examiner Dr. Dave observed Plaintiff to have full range of motion of all joints, except for his right shoulder, slightly decreased sensation and strength of his right wrist and upper extremity, but full strength in the left upper extremity.  (*Id*. at 471-72).  During the examination, Plaintiff also had intact hand and

finger dexterity with 4+/5 grip strength of the right wrist and 5-/5 strength of the left wrist. Dr. Dave also noted that Plaintiff was able to zip, button, and tie bilaterally, which supports his finding about Plaintiff's finger dexterity.  (*Id.*).

Contrary to Plaintiff's conclusions, the ALJ did not engage in lay analysis of the record and, instead, limited Plaintiff to sedentary work with no overhead reaching with his right upper extremity by taking into account the opinion of Dr. Poss, who limited Plaintiff's overhead reaching with his right arm, and by relying on the findings of Plaintiff's orthopedic providers, who routinely noted full strength and reflexes in Plaintiff's shoulders, wrists, and hands with only occasional mildly diminished strength in his right shoulder. Additionally, the ALJ properly considered Plaintiff's own statement that he could not reach above his head and his ability to perform various activities of daily living to determine that he could, at the very least, engage in sedentary work.  (*Id*. at 21-22, 336).  Because the regulations expressly identify daily activities as a factor for the ALJ to consider in evaluating the intensity and persistence of a claimant's symptoms, the ALJ's reliance on Plaintiff's activities was justified.  *See* 20 C.F.R. § 416.929(c)(3)(i); *see also Monroe*, 676 F. App'x at 9 (finding that the ALJ could rely on treatment notes and activities of daily living to formulate the RFC assessment without the benefit of a medical opinion); *Lewis v. Colvin*, 548 F. App'x 675, 678 (2d Cir. 2013) (the ALJ properly did not credit plaintiff's subjective complaints of limiting effects of his impairments when his testimony was not supported by the objective medical evidence and daily activities).  The record here demonstrates that even though Plaintiff could no longer swim, run, or play frisbee golf like he used to, he was able to dress, bathe, and groom himself, clean, do laundry, mow the

lawn, garden, shop once a week, work on models, and go for walks.  (*Id.* at 331, 333-35, 340, 466, 470); *see also Yucekus v. Comm'r of Soc. Sec.*, 829 F. App'x 553, 556 (2d Cir. 2020) (the ALJ's determination that plaintiff's shoulder pain was not severe enough to preclude sedentary work was supported by plaintiff's testimony that he could perform "basic daily tasks, such as dressing himself and grocery shopping."); *Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir. 1980) (plaintiff's ability to cook, shop, wash, and sew supported the ALJ's determination that she could perform sedentary work despite pain).

While Plaintiff may disagree with the ALJ's conclusions, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 25, 29 (2d Cir. 2018) (internal citations and quotations omitted); *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." (internal quotation marks omitted)).  Because Plaintiff has presented no medical evidence of functional limitations greater than those found by the ALJ, he has failed to meet his burden to demonstrate that he had a more restrictive RFC than found by the ALJ.  *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (plaintiff failed to meet burden to prove a more restrictive RFC).  For the reasons stated above, the Court finds that the RFC determination was supported by substantial evidence.  Accordingly, there is no basis for remand or reversal.

## <u>CONCLUSION</u>

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 9) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 8) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:          November 28, 2022
                Rochester, New York